# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION – CINCINNATI

| | |
|---|---|
| MOBILE RIDER, LLC, | Case No. 1:21-cv-54 |
| Plaintiff, | Judge Matthew W. McFarland |
| v. | |
| THE SWITCH ENTERPRISES, LLC, | |
| Defendant. | |

## ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM (Doc. 6)

This case is before the Court on Plaintiff Mobile Rider, LLC's motion to dismiss Defendant The Switch Enterprise, LLC's counterclaim. (Doc. 6.) Switch filed a response in opposition (Doc. 9), to which Mobile Rider filed a reply (Doc. 11), making this matter ripe for review. For the reasons below, Mobile Rider's motion (Doc. 6) is **GRANTED**.

## FACTS

The dispute here is straight-forward. Mobile Rider, seeking to collect money allegedly owed for services rendered, sued Switch for breach of contract and unjust enrichment. In response, Switch asserted a counterclaim under Utah Code Ann. § 78B-5-825, accusing Mobile Rider of litigating in bad faith. Mobile Rider contends that the cited Utah statute does not create an independent right of action, but rather provides merely a mechanism for awarding attorney fees after a judgment has been entered. Mobile Rider thus argues that Switch's counterclaim should be dismissed under Fed. R. Civ. P. 12(b)(6) for failing to state a legally cognizable cause of action.

## LAW

When considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes them in the light most favorable to the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "In practice, a . . . complaint must contain . . . allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (emphasis in original) (citations omitted).

## ANALYSIS

The issue this Court must resolve is whether Utah Code Ann. § 78B-5-825 provides a private right of action. Although Utah courts have been silent as to this precise question, they have provided ample analysis on how this Court must go about answering it. So too has the United States Supreme Court. And while this Court recognizes that United States Supreme Court case law is not always binding on Utah courts, it nevertheless provides a helpful starting point. The Utah Supreme Court agrees. *See Buckner v. Kennard*, 99 P.3d 842, 853 (Utah 2004) (recognizing that Utah courts have applied the U.S. Supreme Court's test for determining if a statute provides an inferred private right of action, yet denoting that Utah court are "not bound to apply

2

[that test] in a manner identical to a federal court.") (*citing Cort v. Ash*, 422 U.S. 66, 78 (1975); *Broadbent v. Cache County School Board*, 910 P.2d 1274, 1279 (Utah App. 1996)).

"The question of the existence of a statutory cause of action is, of course, one of statutory construction." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (citations omitted). "[A]s with any case involving the interpretation of a statute, [a court's] analysis must begin with the language of the statute itself." *Id.* For it is the role of legislators to write the law. And only they can create a private right of action. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (Scalia, J.) ("private rights of action to enforce federal law must be created by Congress.") (*citing Touche*, 442 U.S. at 578) (remedies available are those "that Congress enacted into law"). It is then the role of the judiciary to "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* "The central inquiry [is] whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche*, 442 U.S. at 575.

That being said, the United States Supreme Court holds a strong presumption against implied rights of action and has only found them to exist in certain limited circumstances. *See id.* at 569 (collecting cases). It directs that "[w]hen Congress intends private litigants to have a cause of action to support their statutory rights, the far better course is for it to specify as much when it creates those rights." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979). And "the existence of the thousands of statutory prohibitions that *do* explicitly provide for private rights of action should lead us to be skeptical of implied rights." Antonin Scalia & Bryan A. Garner, READING LAW: THE

3

INTERPRETATION OF LEGAL TEXTS 313 (2012) (discussing the presumption against an implied right of action) (emphasis in original). As such, a private right of action "cannot be found to be 'implied' unless the implication both is clear and is based on the text of the statute." *Id.* at 317. For without some discernible basis in the text of the statute itself, a right of action "does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286-87.

The Utah Supreme Court follows a similar—if not more direct—approach. Indeed, "[w]hether a particular statute provides a private right of action is a question of statutory interpretation." *Buckner*, 99 P.3d at 853. Utah courts are thus directed to "first examine the statute[] to determine whether [its] plain language reveals an express legislative intent to create a private right of action." *Id.* at 854. However, "[i]n Utah, in the absence of language expressly granting a private right of action, the courts of this state are reluctant to imply a private right of action based on state law." *Id.* at 853 (cleaned up). In fact, "Utah courts have rarely, if ever, found a Utah statute to grant an implied private right of action." *Id.* at 853-54 (collecting cases); *see also Conner v. Dep't of Com.*, 443 P.3d 1250, 1258 (Utah App. 2019) ("The courts of this state are not generally in the habit of implying a private right of action based upon state law, absent some specific direction from the Legislature."). This is because, historically, when "the Utah Legislature has intended to establish a private right of action, it has done so expressly." *Conner*, 443 P.3d at 1258. As such, "[t]he Utah Code has many examples of the explicit language which creates such rights, none of which require anyone to add language or

4

make inferences to impart the full meaning of the statute." *Miller v. Weaver*, 66 P.3d 592, 598 (Utah 2004). "For example, the Utah Protection of Public Employees Act provides that a public employee may assert a claim of retaliatory action by 'bringing a civil action for appropriate injunctive relief, damages, or both.'" *Conner*, 443 P.3d at 1258 (*citing* Utah Code Ann. § 67-21-4(1)(c)(ii)).

Bearing these considerations in mind, the Court must heed the Utah Supreme Court's directive and first examine the plain language of the statute to determine if it reveals an express legislative intent to create a private right of action.

The statute at issue here, Utah Code Ann. § 78B-5-825, is straight-forward. It states that:

> In civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith.

Utah Code Ann. § 78B-5-825(1). Based on a plain reading, it is clear that the statute does not expressly state a private right of action. Rather, it simply provides for attorney fees in civil cases if the court determines that the underlying "action or defense to the action was without merit and not brought in good faith." *Id*. Moreover, its application is entirely dependent on a party "prevailing" on the underlying "action or defense to the action." *Id*. In other words, for the statute to even apply, a party must first win judgment in its favor on some other stated claim upon which relief can be granted. A plain reading of the statute thus indicates that it is merely procedural in nature and simply provides for a particular remedy that is ancillary to some other "prevailing" claim. *Id*. There is no language that could be read as either an express or implied grant

5

of a right of action to sue someone who has "asserted meritless claims in bad faith," as Switch contends. (Doc. 4 at p. 7.)

The Court therefore finds that Utah Code Ann. § 78B-5-825 does not create an independent cause of action, but rather simply defines procedures under which remedies may be sought as an ancillary to an underlying claim.

This decision is further reinforced by the Tenth Circuit—the only court to have addressed this issue. In *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1199 fn 4 (10th Cir. 2011), the Tenth Circuit stated that a plaintiff's nearly identical claim for attorney fees under Utah Code Ann. § 78B-5-825— the presently disputed statute's predecessor—"appears to be a novel attempt to request sanctions as part of a complaint," wherein "Plaintiff asked the court to order Defendants to pay Plaintiff's costs." *Id*. The Tenth Circuit resolved the issue in indisputable terms: "This claim has **no plausible legal basis**." *Id*. (emphasis added). Moreover, the Tenth Circuit also expressly rebuffed a plaintiff's similar attempt to assert a claim under 42 U.S.C. § 1988—an analogous federal statute that provides for attorney fees. *See O'Connor v. St. John's Coll.*, 290 F. App'x 137, 139 fn 1 (10th Cir. 2008) ("we note that [42 U.S.C. § 1988] does not create independent causes of action, it simply defines procedures under which remedies may be sought in civil rights actions.") (cleaned up). Although neither of these Tenth Circuit cases are binding on Utah courts, both serve to reinforce this Court's decision that Switch's attempt to assert a counterclaim under Utah Code Ann. § 78B-5-825 has "no plausible legal basis." *Commonwealth*, 680 F.3d at fn 4.

Moreover, this action is in federal court pursuant to its diversity jurisdiction. (*See* Doc. 1 at p. 4-5.) The Tenth Circuit "has explained that in diversity cases, fees that are based on a litigant's bad faith conduct are procedural fees and are thus governed by the federal rules." *Taylor v. Nat'l Collegiate Student Loan Tr. 2007-1*, No. 2:19-CV-00120-BSJ, 2021 WL 872494, at *2 (D. Utah Mar. 9, 2021) (denying motion for attorney fees pursuant to Utah Code §§ 78B-5-825 and 78B-5-826), citing *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 460-61 (10th Cir. 2017) (citation omitted). Thus, if Switch were to seek attorney fees in this action, it would have to do so under the federal rules or ask the Court to invoke its inherent power to sanction misconduct.

## CONCLUSION

Accordingly, Mobile Rider's motion to dismiss (Doc. 6) is hereby **GRANTED** and Switch's counterclaim is **DISMISSED with prejudice**. In the event that the Court dismisses Switch's counterclaim, which the Court has, Switch alternatively requests that it be permitted to amend its answer and counterclaim to preserve its demand for attorney fees. As Switch has not demonstrated that it has any such right, its request is **DENIED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND