IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| MOBILE RIDER, LLC, | : | Case No. 1:21-cv-054 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| THE SWITCH ENTERPRISES, LLC, | : | |
| Defendant. | : | |

## ORDER AND OPINION

This matter is before the Court on the parties' cross motions for summary judgment. First, Plaintiff filed its Motion for Summary Judgment (Doc. 14). Defendant also filed a Motion for Summary Judgment together with its Response in Opposition (Doc. 22). Plaintiff responded (Doc. 26), and each party replied in support of their respective motions (Doc. 25 & 27). Thus, the motions are fully briefed and ripe for review.

As explained below, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

### FACTS

In this matter, Plaintiff Mobile Rider, LLC ("Mobile Rider") brings this suit against Defendant The Switch Enterprises, LLC ("Switch") alleging that Switch failed to pay Mobile Rider in accordance with the parties' Applications and Services Agreement

("Agreement"), thus, breaching the Agreement. Mobile Rider also pled unjust enrichment. And, of relevant note, prayed for reasonable attorneys' fees in accordance with the Agreement.

Each party contends that they are entitled to summary judgment on Mobile Rider's breach of contract claim. Switch claims to also be entitled to summary judgment with respect to Mobile Rider's unjust enrichment claim. Lastly, Mobile Rider contends it is entitled to attorneys' fees as a matter of law. To the contrary, Switch claims that Mobile Rider's request for reasonable attorneys' fees should be denied as a matter of law.

**I.     Contract Dispute between Mobile Rider and Switch**

Mobile Rider is a Utah limited liability company "in the business of, among other things, providing software as a service for interactive mobile and internet video marketing and mobile and web-based communities." (Switch's Answer to Mobile Rider's Complaint ("Answer"), Doc. 4, Pg. ID 63-64.) Switch, on the other hand, is a Massachusetts limited liability company registered to do business in Ohio. (*Id.* at 64.) In October of 2020, Mobile Rider and Switch entered into the Agreement, requiring Mobile Rider to provide a variety of software services. (Declaration of Noah Hollander in Support of Mobile Rider's Motion for Summary Judgment ("Hollander MSJ Decl."), Doc. 14-1, Pg. ID 170.) Switch agreed to pay Mobile Rider $265,920.00 for Mobile Rider services in addition to $0.05 per gigabyte of Akamai Adaptive Medial Delivery Usage over the minimum commitment of 1,000,000 gigabytes. (Answer, Doc. 4, Pg. ID 64.)

The Agreement contains Payment Provisions, which state, "Payment is due in U.S. Dollars within thirty (30) days after the date of invoice. Client accounts are in default if

2

payment is not received within thirty (30) days after the date of the invoice and is subject to termination upon notice and opportunity to cure . . ." (Agreement, Doc. 3, Pg. ID 57.) Additionally, the Agreement states that "[a]ll fees and other charges not paid when due shall be subject to late charges equal to the lesser of (a) one percent (1%) per month of the overdue amount or (b) the maximum interest rate permitted under applicable law." (*Id.*)

Lastly, the Agreement allows for the indemnification of the parties, stating:

Both parties agree to and do hereby indemnify, save and hold the other party and its affiliates, officers, directors, employees, agents, successors and assigns harmless from and against any and all losses, liabilities, damages and costs and all related costs and expenses (including reasonable attorneys' fees) arising out of, connected with or as a result of any material [sic] breach by that party of any warranty or representation contained within this Agreement.

(*Id.* at 58.)

Mobile Rider invoiced 50% of the contract value in two installments prior to providing its services. (Answer, Doc. 4, Pg. ID 65.) Switch paid those installments. (*Id.*) Thereafter, Mobile Rider completed its contractual obligations. (Hollander Decl., Doc. 14-1, Pg. ID 170.)

After completion, on October 22, 2020, Mobile Rider issued an invoice to Switch for $132,960.00, which amounted to the outstanding 50% of the face value of the Agreement. (October 22, 2020 Invoice, Doc. 14-1, Pg. ID 184.) Then, on October 28, 2020, Mobile Rider issued an invoice to Switch for $152,830.30. (October 28, 2020 Invoice, Doc. 14-1, Pg. ID 186.) The additional invoice was for the Akamai bandwidth overage charges. (Hollander Decl., Doc. 14-1, Pg. ID 171.) Thus, in total as of October 28, 2020, Mobile Rider invoiced Switch $285,790.30 in accordance with the Agreement. (*Id.*) Also in total, Switch

3

owed $285,790.30. (*Id.; see also* Agreement, Doc. 3, Pg. ID 57.)

Switch failed to timely pay either invoice. (Hollander Decl., Doc. 14-1, Pg. ID 171.) Thus, Noah Hollander, the Chief Operating Officer of Mobile Rider, contacted Switch to prompt payment in December of 2020. (*Id.* at Pg. ID 170-71.) Switch admitted to owing the outstanding amount. (*Id.*) But instead of paying the total amount owed, Switch wired Mobile Rider $25,000 on December 11, 2020, making the remaining balance $260,790.30. (Answer, Doc. 4, Pg. ID 67.) Then, Switch informed Mobile Rider that it was unable to pay the remaining balance on the Agreement at that time. (Hollander Decl., Doc. 14-1, Pg. ID 171.) The parties then attempted to renegotiate a payment plan for the remaining balance. (*Id.*) Switch informed Mobile Rider that it would "look to pay 50% of the balance due by the end of January 2021." (Answer, Doc. 4, Pg. ID 66.) Unsatisfied, Mobile Rider filed this action.

## II. Switch Payments During the Course of this Litigation

During the course of this litigation, the parties have continued to negotiate a settlement that would satisfy Switch's remaining debt to Mobile Rider. (Counsel's March Email Chain, Doc. 27-1, Pg. ID 679-91.)[1] However, no settlement was reached. (*Id.*) Nonetheless, Switch continued to make partial payments on its debt throughout this litigation. (Andrew Goldstein Declaration, Doc. 23-3, Pg. ID 380.) Specifically, Switch made the following payments: (1) $25,000.00 on February 11, 2021; (2) $61,750.00 on

---

[1] Generally, settlement offers and negotiations are inadmissible pursuant to Fed. R. Ev. 408. However, each party referenced the settlement negotiations in their respective arguments. Additionally, Switch specifically states that "admission of this evidence is agreeable to Defendant The Switch . . ." (Switch Reply in Support, Doc. 27, Pg. ID 668, fn. 1.) Therefore, the Court considers such evidence.

4

March 31, 2021; (3) $61,750.00 on April 29, 2021; (4) $61,750.00 on May 27, 2021; and (5) $64,455.99 on June 30, 2021. (Payment Invoices, Doc. 23-3, Pg. ID 526-531.) Thus, between February 11, 2021 to June 30, 2021, Switch made payments equaling $274,705.99 to Mobile Rider. (*See id.*)

However, despite these payments, Mobile Rider alleges that Switch still owes a balance of $570.31 as of June 30, 2021. (Declaration of Noah Hollander in Support of Mobile Rider's Response in Opposition ("Hollander Response in Opp. Decl."), Doc. 26-1, Pg. ID 655.) Also, Mobile Rider alleges that such balance accrues $0.1875 in interest per day. (*Id.*)

### III. Procedural History

After Switch informed Mobile Rider that it would not make full payment on its outstanding obligations, Mobile Rider filed its Complaint in the Court of Common Pleas of Hamilton County, Ohio on December 18, 2020. (Notice of Removal, Doc. 1, Pg. ID 1.) Mobile Rider filed the following claims: Count I – Breach of Contract; and Count II – Unjust Enrichment. (Complaint ("Compl."), Doc. 3, Pg. ID 50-51.) Plaintiff seeks both compensatory damages and attorneys' fees. (*Id.* at 52.)

Switch filed its Answer and Counterclaim in state court on January 20, 2021. (Notice of Removal, Doc. 1, Pg. ID 3.) Switch then, the following day, removed the case to this Court. (*See id.*) Mobile Rider then filed a Motion to Remand which it later withdrew. (*See* Motion to Remand, Doc. 5; Plaintiff's Notice of Withdrawal of Motion to Remand, Doc. 10.) Instead, it filed a Motion to Dismiss Switch's Counterclaim for Failure to State a Claim (Doc. 6), which this Court granted, dismissing Switch's Counterclaim

5

with prejudice (Doc. 16). Each party has since filed their respective Motions for Summary Judgment (Docs. 14 & 22).

## LAW

Courts must grant summary judgment if the record "reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing Fed. R. Civ. P. 56(c)). Once the movant has met its initial burden of showing that no genuine issue of material fact remains, the nonmoving party must present "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To do so, the nonmovant must present "significant probative evidence . . . on which a reasonable jury could return a verdict" in their favor. *Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009).

The court "must view the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007). This requirement, however, does not mean that the court must find a factual dispute where record evidence contradicts wholly unsupported allegations. "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). "If a moving party fulfills its burden of demonstrating that no genuine issue of material fact exists, the nonmoving party, to receive a trial, must present some significant probative evidence creating a factual dispute." *Stratienko v. Cordis Corp.*, 429 F.3d 592, 597 (6th Cir. 2005).

## LEGAL ANALYSIS

### I. Mobile Rider is Entitled to Summary Judgment on Its Breach of Contract Claim as a Matter of Law.

A moving party is required to establish a prima facie case for a breach of contract.[2] *See Bair v. Axiom Design, LLC*, 20 P.3d 388 (Utah 2001). "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Id.* at 392. Neither party disputes that a valid contract existed in this case nor that Mobile Rider performed its duties under the contract. Thus, the questions are whether (1) Switch breached the contract and (2) whether Mobile Rider suffered damages.

#### A. Switch Breached the Agreement.

Under Utah law, a breach is defined as a "violation of contractual obligation by failing to perform one's own promise, by repudiating it, or by interfering with another party's performance." *Schenk Family Ltd. P'ship v. NorthShore Ltd. P'ship*, 377 P.3d 697, 700 n. 6 (Utah Ct. App. 2016) (quoting Black's Law Dictionary).

Switch's payment obligation under the Agreement is clear: Switch agreed to pay Mobile Rider $265,920.00 for Mobile Rider's services in addition to $0.05 per gigabyte of Akamai Adaptive Medial Delivery Usage over the minimum commitment of 1,000,000 gigabytes. (Answer, Doc. 4, Pg. ID 64.) The total outstanding balance Switch owed after Mobile Rider performed was $285,790.30, (*Id.* at Pg. ID 65), and Mobile Rider issued

---

[2] The Agreement requires "any dispute arising under, in connection with, or relating to this Agreement" be governed by the laws of the State of Utah. (Agreement, Doc. 3, Pg. ID 60.) Thus, Utah law govern this dispute.

7

invoices reflecting this total owed. (October 22, 2020 Invoice, Doc. 14-1, Pg. ID 184; October 28, 2020 Invoice, Doc. 14-1, Pg. ID 186.)

Pursuant to the Agreement, payment is due "within thirty (30) days after the date of invoice." (Agreement, Doc. 3, Pg. ID 57.) Accordingly, Switch was required to pay the October 22, 2020 Invoice on November 21, 2020 and the October 28, 2020 Invoice on November 27, 2020 in order to not be in default on the account. (Hollander Decl., Doc. 14-1, Pg. ID 171.) Switch failed to timely pay either invoice. (Hollander Decl., Doc. 14-1, Pg. ID 171.)

Switch's failure to make timely payments and failure to fully perform for over six months constitutes a breach of the contract. There can be no reasonable dispute that Switch failed to timely perform its obligations—indeed, it admits that it did not pay the amount owed by November 21, 2020 and November 27, 2020 respectively. This failure to timely pay constitutes a failure to perform its promises as defined by the Agreement.

Switch makes two arguments for why this Court should find that it did not breach the Agreement. First, Switch argues that, because the Agreement allows for late payments on accounts in default, subject to late charges, late payments do not constitute a breach. This argument is tenuous at best. It is not uncommon for a contract to delineate a penalty for late payments. Such a term does not mean that timely payment is not expected or is automatically excused. Switch cites no authority for this proposition, and this strained interpretation bends the contract too far.

Second, Switch argues that, because Mobile Rider did not terminate the Agreement upon Switch being in default as allowed by the Agreement, its conduct did

8

not constitute a breach. Mobile Rider's decision not to terminate does not change the legal effect of Switch's failure to timely pay, nor does it excuse it. At that point, Mobile Rider had completely performed—it sought only to enforce the Agreement against Switch in order to receive its benefit of the bargain. Nothing in the Agreement required Mobile Rider to terminate the contract in order to obtain its benefit of the bargain. The Court is unpersuaded by either argument.

### B. Mobile Rider Incurred Damages.

Finding that Switch breached the Agreement, the Court turns to whether Mobile Rider suffered damages. Non-breaching parties may be entitled to two types of damages: "general damages, which follow naturally from the breach, and consequential damages, which, while not an invariable result of the breach, were reasonably foreseeable by the parties at the time the contract was entered into." *Mahmood v. Ross*, 990 P.2d 933, 937 (Utah 1999). A non-breaching party may recover consequential damages if it proves: "(1) that consequential damages were caused by the contract breach; (2) that consequential damages ought to be allowed because they were foreseeable at the time the parties contracted; and (3) the amount of consequential damages [are] within a reasonable certainty." *Id.* There are two potential categories of damages stemming from Switch's breach: payment owed under the Agreement and attorneys' fees stemming from collecting the past due amount. The Court will analyze each in turn.

#### 1. Payment Owed Under the Agreement

It is unclear, at this point, if Switch still owes Mobile Rider for its services. When Mobile Rider filed its motion, it claimed to still be entitled to over $100,000 under the

9

Agreement. (Mobile Rider's Motion for Summary Judgment, Doc. 14, Pg. ID 153.) However, Switch argues that, since Mobile Rider filed its Motion, it has made multiple payments on its account and has satisfied the outstanding balance owed. (Switch's Motion for Summary Judgment, Doc. 22, Pg. ID 281.) Despite these payments, Mobile Rider contends in its reply brief that Switch still owes $570.31, not including any interest that would continue to accrue. (Mobile Rider's Reply, Doc. 26, Pg. ID 617.) Switch disputes that it still owes $570.31 on the account, taking issue primarily with Mobile Rider's interest calculation. (Switch Reply, Doc. 27, Pg. ID 666-69.)

The parties do not provide sufficient information for the Court to determine which mathematical calculation is correct, but it is clear that, at least as of the filing of the Complaint, Mobile Rider had incurred damages in the form of the past due amounts. Nonetheless, a specific finding of the amount of damages, even if nominal, is not required by the Court to determine that a Mobile Rider demonstrated general damages. *See Bair*, 20 P.3d at 392. Thus, the Court finds that Mobile Rider has demonstrated general damages, but whether Switch still owes a balance for the services performed by Mobile Rider is a genuine issue of material fact.

2. **Attorneys' Fees**

Next, Mobile Rider argues it incurred attorneys' fees which show it was damaged. Switch contends, however, that attorneys' fees are awardable only if there was a material breach of the Agreement, which it argues there was not.

a. **Attorneys' fees can constitute damages under Utah law.**

Under Utah law, attorneys' fees may be recoverable when provided by contract.

10

*Lewiston State Bank v. Greenline Equip., LLC*, 147 P.3d 951, 956 (Utah 2006). Also, "the Utah Supreme Court has allowed an award of attorney fees as consequential damages arising from a breach of contract . . ." *Id.* Indeed, courts "should grant reasonable attorney fees in accordance with a written contractual provision." *Crowley v. Black*, 167 P.3d 1087, 1090 (Utah Ct. App. 2007). And a court should only refuse to grant attorneys' fees in accordance with a contract "in extraordinary circumstances." *Id.* "If provided for by contract, attorney fees are awarded in accordance with the terms of that contract." *Chase v. Scott*, 38 P.3d 1001, 1004 (Utah Ct. App. 2001).

In this case, Mobile Rider's attorneys' fees constitute both general and consequential damages and, thus, demonstrate that Mobile Rider incurred damages. The Agreement expressly provides that a breaching party is required to indemnify and reimburse the non-breaching party for "any and all losses, liabilities, damage and costs and all related costs and expenses (including reasonable attorneys' fees) arising out of, connected with or as a result of any material [sic] breach." (Agreement, Doc. 3, Pg. ID 58.) Because of this plain, undisputed language, reasonable attorneys' fees flow naturally from the contract and constitute general damages. Furthermore, these fees would also constitute consequential damages, as these fees result only from a material breach of contract. (*Id.*) Such fees would be reasonably foreseeable by Switch at the time the parties contracted, and they can be estimated within a reasonable certainty, as shown by the invoices submitted in this litigation. (*See, generally* Vorys, Sater, Seymour and Pease LLP Invoices, Doc. 23-4.) Thus, because Mobile Rider's attorneys' fees constitute both general and consequential damages under the Agreement, Mobile Rider has established damages

so long as it can show there was a material breach.

### b. Mobile Rider has demonstrated a material breach.

The Agreement clearly provides that attorneys' fees are recoverable only if there was a material breach of the Agreement. So, although "a party need not show that a breach is material to recover damages," *Tooele Assoc. Ltd. P'ship v. Tooele City*, 284 P.3d 709, 714 (Utah Ct. App. 2012), Mobile Rider must prove that Switch materially breached the Agreement by failing to make timely payments in order to recover attorneys' fees.

A material breach has been defined by Utah courts as "a failure of performance which defeats the very object of the contract or is of such prime importance that the contract would not have been made if default in that particular had been contemplated . . ." *Polyglycoat Corp. v. Holcomb*, 591 P.2d 449, 451 (Utah 1979) (cleaned up). "[W]hether a breach is a material is a question of degree." *Cross v. Olsen*, 303 P.3d 1030, 1036 (Utah Ct. App. 2013). "[G]enerally, whether a breach is material is a question of fact to be decided by the jury, unless the facts are undisputed; then it is a question of law for the court." *Mazuma Cap. Corp.*, 2009 WL 1066998 at *5 (quoting *Coalville City v. Lundgren*, 930 P.2d 1206, 1209 (Utah Ct. App. 1997) (quoting *McKeon v. Williams*, 799 P.2d 198, 200 (Or. Ct. App. 1990) (en banc)). And Utah law provides that failure to pay the full balance provided within a contract constitutes a material breach. *See Fisher v. Taylor*, 572 P.2d 393, 395 (Utah 1977).

Here, whether Switch's conduct constitutes a material breach is a question of law for this Court because the parties do not dispute the facts in this case. Switch does not dispute that it did not pay the invoiced amount of $285,790.30 within 30 days after the

12

invoice date. Thus, the question is whether delayed payment of this amount for such a time period constitutes a material breach as a matter of law.

The Court concludes that it does. The Agreement between the parties was straightforward: Mobile Rider agreed to provide a service and, in exchange, Switch agreed to pay Mobile Rider based on the payment terms in the Agreement. Thus, Mobile Rider's benefit of the bargain was timely payment. Switch's failure to make timely payments and failure to fully perform for at least six months, if at all, defeated the very object of the contract, as Switch received the benefit of its bargain, while Mobile Rider did not. Indeed, had Mobile Rider known that Switch would default on the over fifty percent (50%) of the price of the Agreement immediately upon Mobile Rider's performance, it cannot be doubted that the contract would not have been consummated. Also, the failure to timely pay such a large sum and, instead, make partial payments not agreed to by the parties over an extended period of time is a significant deviation from the agreed upon terms. Thus, Switch's failure to make timely payments and failure to pay its outstanding balance for over six months after Mobile Rider performed constitutes a material breach.

Because the Court finds that Switch materially breached the Agreement, Mobile Rider is entitled to collect its attorneys' fees as damages flowing from that breach.

## II.    Switch is Entitled to Summary Judgment on Mobile Rider's Unjust Enrichment Claim as a Matter of Law.

Mobile Rider sought relief in this action under two theories: breach of contract and unjust enrichment. Mobile Rider admits that such theories were pled in the alternative. (Mobile Rider's Motion for Summary Judgment, Doc. 14, Pg. ID 151.) "The doctrine [of

13

unjust enrichment] is designed to provide an equitable remedy where one does not exist at law. In other words, if a legal remedy is available, such as a breach of an express contract, the law will not imply the equitable remedy of unjust enrichment." *Am. Towers Owners Ass'n, Inc v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996) (abrogated on other grounds). This Court has found that Mobile Rider is entitled to summary judgment on its breach of contract claim. Thus, Switch is entitled to summary judgment on Mobile Rider's unjust enrichment claim as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court holds the following:

(1) The Court **GRANTS** Mobile Rider's Motion for Summary Judgment and **DENIES** Switch's Motion for Summary Judgment on Count 1 of Mobile Rider's Complaint relating to Mobile Rider's claim of breach of contract.

(2) The Court **GRANTS** Switch's Motion for Summary Judgment on Count 2 of Mobile Rider's Complaint relating to Mobile Rider's claim of unjust enrichment. Thus, Count 2 is **DISMISSED WITH PREJUDICE**.

(3) The Court **FINDS** that Mobile Rider is entitled to compensatory damages and reasonable attorneys' fees pursuant to the Agreement.

(4) The Court will set a status conference by separate order to discuss next steps as it pertains to the value of the damages at issue.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND

15